## COMMONWEALTH *vs.* ANTONIO MOLINA.

Suffolk. February 6, 2003. - April 16, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Probable cause, Exigent circumstances, Warrant. *Probable Cause. Error, Harmless.*

At a hearing on a motion to suppress the defendant's statements to police, as well as police observations of his apartment made subsequent to his arrest, claiming in part that the arrest was unlawful, the judge erred in denying the motion where, although the police had probable cause to arrest the defendant by virtue of the complainant's statement, a finding of exigent circumstances was not warranted in that the circumstances attending the warrantless arrest of the defendant did not prevent the police from taking the time to obtain a warrant; further, upon examination of the nature of the evidence that should have been suppressed, it could not be said that the error in admitting the evidence was harmless beyond a reasonable doubt. [208-213]

INDICTMENT found and returned in the Superior Court Department on August 9, 1996.

A pretrial motion to suppress evidence was heard by *Elizabeth B. Donovan,* J., and the case was tried before her.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Rami M. Vanegas,* Assistant District Attorney, for the Commonwealth.

*Dana Alan Curhan (Lori A. Benavides* with him) for the defendant.

IRELAND, J. A jury in the Superior Court found the defendant guilty of three counts of assault with intent to commit rape and rape. In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court reversed, 55 Mass. App. Ct. 1111 (2002), and we granted the Commonwealth's application for further appellate review. Prior to trial the defendant moved to suppress his statements to police, as well as police observations

of his apartment made subsequent to his arrest, claiming in part that the arrest was unlawful. Because we find there was no legal justification for the warrantless arrest of the defendant in his home, his statements in his apartment and the observations made by the officers inside that apartment while effectuating the unlawful arrest should have been suppressed. We therefore reverse the judgments of the Superior Court.

*Facts.* We will summarize the facts as found by the judge in her denial of the defendant's motion to suppress. Officer Roy Gows of the Boston police department responded to the emergency room of Brigham and Women's Hospital to investigate the report of a rape. The complainant, who had been living in the defendant's apartment for six weeks, stated that she was raped at knife point by the defendant in the apartment. She told Officer Gows the alleged assailant's name was Molina, and gave Officer Gows his address. Officer Gows returned to the police station and, after discussions with Detective Martin Nee and Sergeant John McLean, proceeded to the defendant's apartment in order to effectuate an arrest.

When the officers arrived at the apartment, Officer Gows knocked on the front door. People had begun to gather outside the house when the defendant opened the door. The defendant fit the physical description provided by the complainant and, when asked, identified himself as Molina. Detective Nee and Officer Gows proceeded to step into the living room, which is accessible directly from the front door, and Detective Nee handcuffed the defendant while stating that he was under arrest. At one point, a young woman who also lived in the apartment became very angry and began screaming at the officers. Concerned that she might have access to his firearm, Detective Nee moved the defendant ten feet through an adjacent doorway into the kitchen, while instructing Officer Gows to deal with the young woman.

Sergeant McLean went to the kitchen and joined Detective Nee, as the latter officer was giving the defendant Miranda warnings. The defendant was informed that the complainant had made an allegation of rape, and when asked, he responded that he

had not had sexual intercourse with her.[1] While in the kitchen, the officers noticed a two-foot long knife on the counter, corroborating the complainant's statement that a large knife had been used. The officers then advised the defendant that he would be spending the night at the station, and asked if he wanted to retrieve a sweater to wear over his "muscle shirt." The defendant agreed, and led the officers to his third-floor bedroom. While in the bedroom, the officers saw a brown knife sheath, also described by the complainant. The defendant told the officers the knife was somewhere in the room, but the officers did not search for it. The defendant was again given Miranda warnings during the booking process at the police station. Later, the defendant was overheard saying that he had a past relationship with the complainant, but did not rape her.

*Discussion.* The defendant claims that the warrantless arrest in his apartment was without probable cause and exigent circumstances. As a result, he moved to suppress his statements made in the apartment,[2] as well as the observations made by the officers of the knife in the kitchen and the sheath in the bedroom. When evaluating the denial of a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error. See *Commonwealth* v. *Eckert*, 431 Mass. 591, 592 (2000). We will, however, independently review the correctness of the judge's application of constitutional principles to the facts found. *Id.* at 593.

In this situation, the defendant concedes that the officers had probable cause to arrest him by virtue of the complainant's statement. The police, however, decided to effectuate the arrest

---

[1]At the motion to suppress hearing, the record indicates Detective Nee testified that when he asked the defendant whether he had had sexual intercourse with the complainant, the defendant said, "Yes." This is contrary to the motion judge's finding of fact, the Appeals Court's statement of the facts, and Detective Nee's testimony at trial. At trial, Detective Nee testified that the defendant said, "No," he had not had sexual intercourse with the complainant. The defense did not impeach his testimony, and the Commonwealth relied on this testimony to point out during closing arguments that the defendant's statement contradicted his defense of consensual intercourse.

[2]The defendant also argues that statements made to police at the station should be suppressed as well, because his waiver was not voluntary, knowing, and intelligent. We decline to address this claim because we reverse on other grounds.

inside the defendant's home without first securing a warrant. "The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy." *Commonwealth* v. *Marquez,* 434 Mass. 370, 374 (2001), quoting *Commonwealth* v. *Forde,* 367 Mass. 798, 805 (1975). As a result, "a warrantless entry into a dwelling to arrest in the absence of sufficient justification for the failure to obtain a warrant" is prohibited. *Commonwealth* v. *Forde, supra* at 806. Absent consent,[3] there is sufficient justification for officers to enter a dwelling to execute an arrest, provided two conditions are met: "[t]hey must have probable cause to believe that the defendant committed the crime and there must exist exigent circumstances." *Commonwealth* v. *Pietrass,* 392 Mass. 892, 897 (1984). Because probable cause had been established, the only issue before us is whether exigent circumstances existed so that the officers could enter the defendant's home to effect the arrest.

When proffering justification based on exigent circumstances, the burden is on the Commonwealth to show that "it was impracticable for the police to obtain a warrant, and the standards as to exigency are strict." *Commonwealth* v. *Forde, supra* at 800, citing *McDonald* v. *United States,* 335 U.S. 451, 454-456 (1948). The test considers all of the facts known to the officers at the time of the warrantless arrest. Factors such as "a showing that the crime was one of violence or that the suspect was armed, a clear demonstration of probable cause, strong reason to believe the suspect was in the dwelling, and a likelihood that the suspect would escape if not apprehended" support a finding of exigency. *Commonwealth* v. *Forde, supra* at 807. Factors such as whether the entry was peaceable and made in the daytime are also relevant. See *id.* Finally, concern regarding the destruction or removal of evidence may also support a finding of exigency. See *Commonwealth* v. *Huffman,* 385 Mass. 122, 125-126 & n.5 (1982) (principles governing search warrants and arrest warrants are substantially similar). These factors

---

[3]For the first time on appeal, the Commonwealth argues that the officers had the implied consent of the complainant (who had resided at the apartment for six weeks) to enter the defendant's apartment. The judge made no findings of fact as to this issue, and it was not raised below. While we may affirm the judge's ruling on an alternate ground, we decline to do so because the argument is factually deficient and unpersuasive.

should be examined as a whole, and evaluated to determine whether the circumstances surrounding the warrantless arrest prevented officers from taking the time to obtain a warrant. In its simplest form, the primary purpose of this test is to balance the constitutional rights of the suspect with both the safety of others and the risk of flight by the suspect. See *Commonwealth* v. *Forde*, *supra* at 807.

Applying the enumerated factors to this situation, a finding of exigent circumstances is not warranted. Implicit in the test itself is that police officers cannot deliberately create the exigency that leads to the warrantless arrest. Considered in isolation, the circumstances at the defendant's apartment may have entitled the police to enter and effectuate the warrantless arrest.[4] There was no justification, however, for the officers to go to the defendant's apartment with the purpose of arresting him without a warrant.

While some of the factors of the exigency test have been met,[5] others have not. The alleged assault occurred the night before the complaint was taken by Officer Gows. Officer Gows returned to the station after receiving the complaint in order to make a report, and he subsequently discussed the case with Detective Nee and Sergeant McLean before proceeding to the defendant's apartment. It was certainly foreseeable that the officers would need to enter the apartment to effectuate the arrest; however, no arrest warrant was secured. There is no evidence in the record explaining why the officers neglected to secure a warrant. The Commonwealth offers no evidence supporting any risk of flight, and to the extent that was a concern, nothing prevented the placement of an officer at the premises while a warrant was secured. Additionally, there was no concern regarding destruction of evidence, or any evidence that delay would subject the officers to physical harm.

This was not a situation where officers were in hot pursuit of

[4]Because the very entry itself was unlawful, we need not address the propriety of the subsequent march from room to room as it pertains to admissibility of observations and statements.

[5]The Commonwealth has demonstrated that there was probable cause that a felony had been committed, that the defendant was in the dwelling, and that the crime was one of violence with a dangerous weapon. These factors should have facilitated the procuring of an arrest warrant.

a fleeing suspect in the immediate aftermath of a crime. While the officers did have a person accused of a heinous act, it is the Commonwealth's burden to demonstrate the reasons that the officers failed to secure a warrant. The Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights scrupulously guard against the intrusion of the government into a citizen's home without a warrant. This is a situation where the officers could have, and should have, secured a warrant if the intention was to arrest the suspect. The exigent circumstances that emerged during the arrest were a result of the officers' appearance at the dwelling. The exigent circumstance requirement is not satisfied by virtue of altercations resulting from a warrantless arrest at the home, where there is no showing of exigent circumstances leading to the warrantless arrest itself.

Because the defendant's warrantless arrest in his apartment was unlawful, the police had no legal justification for being inside his apartment at any time. Once inside, any observations by the officers of items in that apartment were made from an unlawful vantage point, and may not be admitted in evidence. See *Wong Sun* v. *United States*, 371 U.S. 471, 484-486 (1963) ("fruit of the poisonous tree" bars admission of direct and indirect products of unlawful search). Additionally, although the defendant's statements made inside the apartment are also inadmissible, his statement of identification prior to the unlawful entry and statements made at the police station subsequent to the unlawful arrest are admissible. See *Commonwealth* v. *Marquez*, 434 Mass. 370, 376-379 (2001) ("where the police have probable cause to arrest a suspect, the . . . exclusionary rule does not bar . . . [the State's use] of a statement made by the defendant outside of his home, even though the statement is taken after an [unlawful] arrest made in the home"). See also *New York* v. *Harris*, 495 U.S. 14, 19-21 (1990).

We must now determine whether the erroneous admission of these statements and observations made during the defendant's unlawful arrest was harmless beyond a reasonable doubt. See *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998) (constitutional errors that are preserved before or during trial are reviewed to determine whether they are harm-

less beyond a reasonable doubt); *Commonwealth* v. *Jones*, 423 Mass. 99, 106 (1996) (constitutional error must be harmless beyond a reasonable doubt). See also *Commonwealth* v. *Vuthy Seng*, 436 Mass. 537, 548 (2002), citing *Commonwealth* v. *Hosey*, 368 Mass. 571, 579 (1975). In determining whether error was harmless beyond a reasonable doubt, "[t]he essential question is whether the error had, or might have had, an effect on the jury and whether the error contributed to or might have contributed to the verdicts." *Commonwealth* v. *Perrot*, 407 Mass. 539, 549 (1990), citing *Commonwealth* v. *Marini*, 375 Mass. 510, 520 (1978). Factors such as whether the tainted evidence was merely cumulative, or whether there was overwhelming evidence of the defendant's guilt through non-tainted evidence, are weighed when determining whether preserved constitutional error was harmless beyond a reasonable doubt. See *Commonwealth* v. *Marini, supra* at 520, citing *Milton* v. *Wainwright*, 407 U.S. 371, 373 (1972).

Examining the nature of the evidence that should have been suppressed, it cannot be said that the error to admit the evidence was harmless beyond a reasonable doubt.[6] See *Commonwealth* v. *Vuthy Seng, supra.* The officers' statements regarding the knife and sheath served to corroborate the complainant's account of the alleged assault. This error was not harmless beyond a reasonable doubt, and taken alone entitles the defendant to a new trial. In addition, the defendant's statements obtained in his apartment immediately after the unlawful arrest, in which he claimed that he had not had sexual intercourse with the complainant,[7] contradicted the defense theory at trial that the intercourse was consensual.

In sum, because the defendant was unlawfully arrested at his home, any statements or observations made by law enforcement officers must be suppressed as fruit of the poisonous tree. Admitting the officers' observation of the knife in the kitchen and sheath in the bedroom, as well as the statements made by the defendant while in his house, was error that was not harmless

---

[6]Because the admission of some statements and observations was error, and as such we are reversing the verdicts, we need not address the defendant's other arguments.

[7]See note 1, *supra.*

beyond a reasonable doubt. Therefore, the judgments are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*