## COMMONWEALTH *vs.* GERMAINE GENTLE.

No. 10-P-622.

Essex. May 9, 2011. - August 25, 2011.

Present: KAFKER, GRAHAM, & MILKEY, JJ.

*Controlled Substances. Firearms. Constitutional Law,* Confrontation of witnesses, Search and seizure. *Search and Seizure,* Exigent circumstances. *Evidence,* Ballistician's certificate, Certificate of drug analysis, Flight. *Practice, Criminal,* Confrontation of witnesses, Motion to suppress.

At the trial of indictments charging drug and firearm offenses, the admission in evidence of certificates of drug and ballistics analysis, without an opportunity to cross-examine the analysts who prepared the certificates, in violation of the defendant's constitutional right to confront witnesses against him, required reversal of his convictions and a new trial, where the error was not harmless beyond a reasonable doubt, and where the defendant's flight midtrial did not preclude application of the principle that a criminal defendant is entitled to enjoy the benefit of a newly declared constitutional rule announced while his direct appeal is pending. [244-246]

This court concluded that a Superior Court judge properly denied the criminal defendant's pretrial motion to suppress evidence discovered as a result of a warrantless entry by police into the defendant's apartment, in that, for purposes of the Fourth Amendment to the United States Constitution (the only ground argued by the defendant in his motion), exigent circumstances justified the warrantless entry; however, where the defendant's convictions were reversed and a new trial was required on other grounds, this court declined to reach the question whether a police-created exigency violated the defendant's rights under art. 14 of the Massachusetts Declaration of Rights, given that the motion to suppress could be renewed and recast prior to the retrial without in any way prejudicing the positions of either the defendant or the Commonwealth. [246-252] MILKEY, J., dissenting.

The evidence at a criminal trial was sufficient to convict the defendant of unauthorized possession of ammunition. [252]

INDICTMENTS found and returned in the Superior Court Department on May 14, 2003.

A pretrial motion to suppress evidence was heard by *Robert H. Bohn, Jr.,* J., and the cases were tried before *Elizabeth M. Fahey,* J.

*Patricia A. Quintilian* for the defendant.
*Ronald E. DeRosa* for the Commonwealth.

KAFKER, J. After he vanished on the fourth day of his trial in November of 2004, the defendant, Germaine Gentle, was convicted of trafficking more than twenty-eight but less than one hundred grams of cocaine in a school zone, G. L. c. 94C, §§ 32E(*b*), 32J; distribution of cocaine, G. L. c. 94C, § 32A(*c*); possession of a firearm without a firearm identification card, G. L. c. 269, § 10(*h*); and possession of ammunition without a firearm identification card, G. L. c. 269, § 10(*h*).

In October, 2008, the defendant was arrested while traveling from Barbados to Canada, and the Commonwealth arranged to have him returned to Massachusetts. After the default was removed, the defendant was sentenced in February, 2009. The defendant asserts that the introduction of certificates of drug and ballistics analysis without an opportunity to cross-examine the analysts who prepared the certificates violated his right to confront witnesses against him as articulated by the United States Supreme Court in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009) (*Melendez-Diaz*). The Commonwealth contends that the defendant should not get the benefit of *Melendez-Diaz*, which was decided prior to his appeal, because if he had not defaulted, his appeal would have been concluded prior to the decision in *Melendez-Diaz*. We reject this argument and conclude that *Melendez-Diaz* requires reversal of his drug and gun convictions. The defendant also challenges the denial of his motion to suppress certain evidence found during a search of his apartment on the ground that the police's failure to obtain a search warrant cannot be justified based on exigent circumstances. As the defendant's exigency argument has evolved substantially on appeal, we conclude that the original argument presented to the motion judge, which was based on the Fourth Amendment to the United States Constitution, was properly denied. The still-evolving claim to the effect that the police created the exigency in violation of art. 14 of the Massachusetts Declaration of Rights is more appropriately raised in a renewed motion to suppress prior to any retrial in this case.

*Right of confrontation.* In support of the defendant's drug convictions, the Commonwealth introduced laboratory certificates that the material at issue was cocaine and that it had a particular weight. Similarly, the Commonwealth introduced a

certificate of ballistics analysis to demonstrate that the firearm found in the defendant's apartment was in working order. The defendant's lead argument is that the admission of these certificates without live witnesses violated his right under the Sixth Amendment to the United States Constitution to confront the witnesses against him. The Commonwealth concedes that this was error, and that this error was not harmless beyond a reasonable doubt. *Melendez-Diaz, supra* at 2532. However, despite the fact that it is well established that *Melendez-Diaz* applies to cases with appeals pending when *Melendez-Diaz* was decided, see *Commonwealth* v. *Fluellen,* 456 Mass. 517, 525 (2010), the Commonwealth nevertheless asks us not to do so here. The Commonwealth argues that, had the defendant not fled midtrial, his sentencing would not have been delayed and his direct appeal likely would have concluded before *Melendez-Diaz* was issued in June, 2009.[1] According to the Commonwealth, applying *Melendez-Diaz* here would allow the defendant to "benefit" from his wrongdoing. This in turn "would create an incentive for defendants to flee midtrial with the hope that a change in the law in their favor occurs while they are on the run."

The Commonwealth's argument is unpersuasive. The idea that a defendant would base his decision whether to flee on the possibility that the case law might eventually develop in his favor (regarding an issue that his counsel has not pressed) lacks plausibility.[2] Indeed, a defendant also risks an unfavorable change in the law while an appeal is pending.[3] See discussion, *infra,* regarding the suppression issues. In any event, the Commonwealth has cited no case law that justifies departure from the principle that a criminal defendant is entitled to enjoy the benefit of a newly declared constitutional rule announced while his direct

---

[1]The Supreme Judicial Court has recently concluded that the rule announced by the Supreme Court in *Melendez-Diaz* does not "apply on collateral review to convictions that were final before the new rule was announced." *Commonwealth* v. *Melendez-Diaz,* 460 Mass. 238, 243 (2011).

[2]We note that a criminal defendant who fails to appear in court risks prosecution under G. L. c. 276, § 82A (maximum punishments include a $50,000 fine and five-year prison term for felonies).

[3]The Commonwealth also asks us to assume that the defendant's direct appeal would necessarily have been complete by the time *Melendez-Diaz* was announced and that his appellate counsel would not have raised the issue in light of *Crawford* v. *Washington,* 541 U.S. 36 (2004).

appeal is pending. See *Griffith* v. *Kentucky*, 479 U.S. 314, 322 (1987) ("failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication"). Therefore, the constitutional error in the introduction of the certificates of drug and ballistics analysis warrants a new trial on the defendant's trafficking, distribution, and unlicensed firearm possession convictions.

*Motion to suppress.* For purposes of any retrial, we turn next to the defendant's argument regarding suppression of the evidence. The motion judge found that on March 10, 2003, Paul Holey, an undercover police officer in the Lynn police department, while traveling in an unmarked vehicle, observed the defendant's vehicle, a white Hyundai Santa Fe, backed into a parking space in front of a 7-Eleven store. Holey knew of prior drug transactions in the 7-Eleven store parking lot, and Lynn police for months had been investigating the defendant for suspicion of distributing drugs.[4] In the parking lot, Holey observed two men in the front seats of the vehicle engaged in what he concluded was a drug transaction. He believed that the defendant was the driver. Holey observed the passenger, later identified as Eric Griffin, leave the Santa Fe and run toward a waiting vehicle. Holey then saw the defendant drive away in his Santa Fe in the direction of his apartment. Holey stopped the second vehicle and ordered Griffin out of the car. As Griffin did so, a small packet of cocaine fell from his person. Holey arrested Griffin, who said that he had just purchased cocaine from the defendant. According to Holey's testimony, there were two other individuals in Griffin's vehicle, who, together with Griffin, were cooperative with Holey and acknowledged that "they" had just purchased cocaine from the defendant. Nothing in the record indicates anything further about them.

After arresting Griffin, Holey called the dispatcher and requested officers be sent to the defendant's address. Officers found the Santa Fe parked there. When Holey arrived, there were six or seven officers on the scene, and they surrounded the premises. Holey and another officer knocked on the defendant's

---

[4] In November, 2002, Holey had been dispatched to the defendant's apartment in response to a domestic abuse complaint. There, the defendant's girlfriend told him that the defendant was dealing drugs from the apartment and his vehicle, a white Hyundai Santa Fe.

apartment door but heard no response, although he heard people moving about. He announced his presence and knocked again, stating he was going to obtain a search warrant if the door was not opened. Again he received no response.

At this point, Holey learned from an officer in the side yard of the building that a man had ripped a hole in the window screen of the defendant's apartment and appeared ready to jump. Holey ran outside, and as he arrived in the yard, he heard an object strike a tree and fall to the ground. (The object was later found to be a bag that contained some fifty-five grams of cocaine, a handgun ammunition magazine, and handgun ammunition). Holey and another officer returned to the apartment. Concerned that evidence was being destroyed, officers forced their way into the apartment. They had neither an arrest nor a search warrant, nor had they applied for one.

Inside, officers found four persons seated on a couch: the defendant, a second man, a woman, and a young child. The police arrested the defendant, and while performing a protective sweep of the apartment, they found a handgun protruding from a mattress in a bedroom and a large sum of money hidden in a curtain.[5] Holey decided not to apply for a search warrant because he concluded that officers had gathered all the evidence in the apartment.

The defendant filed a motion to suppress evidence discovered as a result of the warrantless entry, including the handgun. For the reasons discussed below, we conclude that the motion as presented and argued was properly denied, as the defendant made a general exigent circumstances argument under the Fourth Amendment and did not raise an art. 14 based, police-created exigency argument. See Mass.R.Crim.P. 13(a), as appearing in 442 Mass. 1516 (2004) (requiring that a pretrial motion "state the grounds on which it is based . . . with particularity").

---

[5]The trial judge allowed testimony from Officer Holey that some marijuana had fallen from the child's diaper when the child and the woman (the child's babysitter) emerged from the bathroom. The defendant was not charged with possession of the marijuana (at the time, a criminal offense). The defendant argues that the admission of this evidence, in the absence of any direct evidence that it was the defendant and not the babysitter who had placed the marijuana there, was unduly prejudicial. No such objection was made during trial. We discern no error in the trial judge's handling of this evidentiary issue.

Moreover, a renewed motion, based on such an argument, may be presented prior to any retrial on the drug and gun indictments in the instant case. Therefore, there is no reason to decide this issue without comprehensive briefing and fact finding, both of which are absent here in regard to the question whether there was a police-created exigency under art. 14.

In his motion to suppress, the defendant made a general argument to the effect that there was not an exigency justifying the warrantless entry. His argument appears to only rely on and recognize the Fourth Amendment. He argued that "[t]he right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy. It was just this sort of intrusion that the Fourth Amendment was designed to circumscribe by the general requirement of a judicial determination of probable cause. *Angello* v. *United States*, 269 U.S. 20, 32-32 (1925)." He argued further that the police are required to demonstrate exigent circumstances to justify such an entry and that "the Court believed that the Fourth Amendment prohibits a warrantless entry into a dwelling to arrest in the absence of sufficient justification for the failure to obtain a warrant. *Commonwealth* v. *Forde*, 367 Mass. 798, 806 (1975)." Nowhere in the motion to suppress does he expressly raise a claim based on art. 14. Nor does he specifically argue that if there were an exigency, it was created by the police themselves.

The motion judge, responding to the arguments made before him, determined that there were exigent circumstances justifying the search. He concluded, quoting from *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 599 (1991), that "[t]his is a case where 'there existed a real likelihood that the delay attendant upon securing a warrant would facilitate the destruction of evidence.' " He came to that conclusion because the "officers were faced with a chaotic and rapidly deteriorating situation where a series of unforeseen events led [the police officer] to believe that he needed to act quickly or risk the loss of evidence." The motion judge expressly relied on the fact that one officer had observed someone in the apartment rip a hole in a window screen and another had heard an object, apparently thrown from the apartment, strike a tree. The motion judge did not, however, address the issue whether the exigency was of the

police's own making when they sought to arrest the defendant at his apartment without a warrant, or whether the exigency existed prior to their arrival at the apartment.[6] Based on the record before us, it does not appear that the issue whether the exigency was created by the police by their appearance at the defendant's apartment was argued to the motion judge.

Moreover, after briefing and oral argument in this case, the United States Supreme Court in *Kentucky* v. *King*, 131 S. Ct. 1849 (2011) (*King*), decided that where "the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed." *Id.* at 1858. The Court, in an 8-1 decision, held that the police may knock on the door of the suspect and announce their presence, and the exigent circumstances rule may still apply, so long as "the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment." *Id.* at 1862. According to the Court, "[o]ccupants who choose not to stand on their constitutional rights [not to speak to the officers or allow entry] but instead elect to attempt to destroy evidence have only themselves to blame for the warrantless exigent-circumstances search that may ensue." *Ibid.* In the instant case, the police knocked on the door, announced their presence, and stated that they were going to obtain a search warrant if the door was not opened. Such conduct clearly does not violate the Fourth Amendment according to the *King* standard.

In review, the defendant's motion to suppress was brought pursuant to the Fourth Amendment; the defendant did not argue that the exigency was created by the police; the judge did not address the issue in his fact findings or legal conclusions; and after *King*, no such argument could be made under the Fourth Amendment. The motion to suppress was therefore properly denied.

The question then becomes whether we should nonetheless decide the issue of the police-created exigency under art. 14, as

---

[6]The motion judge did not determine, for example, whether the defendant was aware that the transaction outside the 7-Eleven store had been observed or whether there was an opportunity for someone present at the 7-Eleven store transaction to alert the defendant that an arrest had been made. We do not agree, as the dissent argues, that we can resolve these factual issues on our own.

the dissent contends. As the Supreme Judicial Court has advised, "[w]e do not normally consider on appeal issues that were not fairly raised below." *Commonwealth* v. *Hilton*, 443 Mass. 597, 618 n.12 (2005), *S.C.*, 450 Mass. 173 (2007). Moreover, there is no necessity to address the issue now as it can be properly presented, argued, and briefed below, and the judge can make all the necessary fact findings after being focused on the issue.

We recognize that the Supreme Judicial Court may very well take a different approach under art. 14. Although the Supreme Judicial Court's interpretation of art. 14 has often converged with the United States Supreme Court's interpretation of the Fourth Amendment, when the Supreme Judicial Court has diverged it has emphasized its obligation to undertake an independent review of the State Constitution and the court's freedom to interpret the State Constitution to provide a different balancing of the interests of privacy and the police, including the imposition of tighter constraints on the actions of individual police officers in the field. See *Commonwealth* v. *Upton*, 394 Mass. 363, 372-373 (1985); *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 667-668 (1999) (both majority and concurring opinions). Moreover, in *Commonwealth* v. *Molina*, 439 Mass. 206, 211 (2003) (*Molina*), the Supreme Judicial Court articulated a position on police-created exigency that appears to have anticipated the views reflected in the dissent in *King*.[7] In *Molina*, the Supreme Judicial Court focused on the issue of a police-created exigency and stated that "[t]he Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights scrupulously guard against the intrusion of the government into a citizen's home without a warrant." *Ibid.* The court held that "[t]he exigent circumstance requirement is not satisfied by virtue of altercations resulting from a warrantless arrest at the home, where there is no showing of exigent circumstances leading to the warrantless arrest itself." *Ibid. Molina* did not, however, explain whether it was relying on art. 14, the Fourth Amendment, or both for this proposition. The Supreme Judicial Court did not parse the issue.

---

[7]Justice Ginsburg was the sole dissenter in *King*. She concluded that "the urgency must exist . . . when the police come on the scene, not subsequent to their arrival, prompted by their own conduct." *King*, 131 S. Ct. at 1864 (Ginsburg, J., dissenting).

*Molina* and *King* thus appear inconsistent with each other as a matter of Fourth Amendment jurisprudence. The United States Supreme Court's views obviously control Fourth Amendment analysis. To the extent *Molina* can be based solely on art. 14, a clearer expression to that effect is required to constitute an adequate and independent State ground for decision, at least for review by the United States Supreme Court. See *Michigan* v. *Long,* 463 U.S. 1032, 1040-1041 (1983) ("when . . . a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, [the Supreme Court] will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so"). The Supreme Judicial Court has carefully reconstructed its analysis in the past when the Federal basis of its decision has been eliminated by the Supreme Court. See *Commonwealth* v. *Upton, supra* at 369-377.

This case exemplifies the importance of potential distinctions between art. 14 and the Fourth Amendment. See Friedman & Thody, The Massachusetts State Constitution 68-69 (2011) ("Though Article XIV served as a model for the Fourth Amendment to the U.S. Constitution, the U.S. Supreme Court and the Supreme Judicial Court have often diverged in their respective interpretations of the protection against unreasonable searches and seizures"). The two provisions provide double protection of individual rights. They also require independent analysis. They may be interpreted to provide similar protection but it cannot be assumed that they will do so absent guidance to that effect by the Supreme Judicial Court. Careful attention to the potential differences between art. 14 and the Fourth Amendment is therefore required at every stage in the proceedings in order to avoid confusion in the individual case and the case law.

In sum, we decide not to resolve prematurely a novel State constitutional question that was not properly presented to the trial court. The facts related to whether the exigency was created by the police were not fully developed. We particularly see no need to do so in a case where the relevant convictions have been reversed and the motion to suppress can be renewed and

recast without in any way prejudicing the positions of either the defense or the Commonwealth.

*Ammunition conviction.* Finally, we address the defendant's conviction of unauthorized possession of ammunition. The defendant has not raised a *Melendez-Diaz* issue with regard to that conviction. Moreover, that conviction was based not on evidence the police discovered inside the apartment, but on what was found in the bag that was discarded from the apartment before police conducted their warrantless search. The defendant does not argue, nor does he have any basis to argue, that there was any error in the admission of the ammunition in evidence. In fact, although the defendant maintains that all his convictions should be reversed, he has not argued how any error prejudiced him with regard to the ammunition charge. See *Commonwealth* v. *Gray*, 423 Mass. 293, 296-297 (1996) (claims of error "not supported by reasoned argument or citations . . . do not rise to the level of appellate advocacy required under Mass.R.A.P. 16[a][4], as amended, 367 Mass. 921 [1975]").[8]

*Conclusion.* We affirm the judgment of conviction of possession of ammunition without a firearm identification card, G. L. c. 269, § 10(*h*). We reverse the remaining judgments and set aside the verdicts. We affirm the denial of the defendant's motion to suppress without prejudice to his seeking to raise his art. 14 argument in a new pretrial motion.

*So ordered.*

MILKEY, J. (dissenting in part). I agree with most of the majority's thoughtful opinion. However, I do not agree that we should defer addressing the question whether art. 14 of the Massachusetts Declaration of Rights provides greater protection than the Fourth Amendment to the United States Constitution with regard to the police-created exigency doctrine. I write separately to explain why I believe we should reach that issue in the current appeal.

---

[8]In any event, we discern no basis for reversal of that charge. With regard to the Commonwealth's reliance on the gun (which the defendant claims should have been suppressed) as proof that the ammunition found in the bag belonged to the defendant, we note that there was other evidence providing such a link, and that the defendant was an occupant of the apartment from which the bag was discarded.

As an initial matter, I note that, in arguing the motion to suppress below, the defendant's counsel plainly could have done a far better job of crystallizing the theory of suppression on which he was relying. Given that Mass.R.Crim.P. 13(a), as appearing in 442 Mass. 1516 (2004), requires that a pretrial motion "state the grounds on which it is based . . . with particularity," the defendant arguably did not preserve his police-created exigency argument (whether based on Federal or State law). See *Commonwealth* v. *Lodge*, 431 Mass. 461, 474 (2000). On the other hand, the defendant has at least some argument that his current theory of suppression is subsumed in the arguments he did make below.[1] In the end, I see no need to resolve the question of waiver, because the Commonwealth has not actually argued that the defendant's police-created exigency argument is not before us. Cf. *Commonwealth* v. *Mubdi*, 456 Mass. 385, 390-391 (2010) (because the Commonwealth did not raise the issue of the particularity of the affidavit or sufficiency of the motion under rule 13[a][2] below, the Commonwealth waived it). Instead, the Commonwealth expressly invited us to review that argument under a substantial risk of a miscarriage of justice standard of review.[2]

---

[1]Although one can characterize the question whether the police created the exigency as a distinct analytical point, it does not have to be seen that way. In looking at the exigent circumstances exception to the warrant requirement, the Supreme Judicial Court has emphasized that the key underlying question is whether "it was impracticable for the police to obtain a warrant." *Commonwealth* v. *Molina*, 439 Mass. 206, 209 (2003), quoting from *Commonwealth* v. *Forde*, 367 Mass. 798, 800 (1975). Citing *Commonwealth* v. *Forde*, the defendant did argue below that police lacked "sufficient justification for the failure to obtain a warrant."

[2]To support its position that the issue is before us on substantial risk review, the Commonwealth cites to *Commonwealth* v. *Vuthy Seng*, 436 Mass. 537, 550, cert. denied, 537 U.S. 942 (2002). For other examples of cases that appear to countenance review of a new suppression theory under a substantial risk of a miscarriage of justice standard even on direct review, see *Commonwealth* v. *Scala*, 380 Mass. 500, 509-510 (1980); *Commonwealth* v. *Hilton*, 443 Mass. 597, 618-619 n.12 (2005), *S.C.*, 450 Mass. 173 (2007). As we observed in *Commonwealth* v. *Johnston*, 60 Mass. App. Ct. 13, 17-21 & n.7 (2003), there is a tension in the case law between such cases and those that suggest that a new suppression theory simply cannot be raised on direct appeal. For illustrative examples of the latter, see *Commonwealth* v. *Ramos*, 402 Mass. 209, 211 (1988); *Commonwealth* v. *Rivera*, 429 Mass. 620, 623 (1999). As noted, however, the Commonwealth has not raised such an argument.

I recognize that the defendant's motion to suppress did not specifically invoke art. 14, and I agree with the majority's statements about the importance of parties (and courts) distinguishing between Federal and State grounds. But the defendant's failure to draw a distinction between State and Federal law is hardly surprising given that, at the time, there was little reason to think that the substance of the police-created exigency doctrine would be any different under the two bodies of law. See *Commonwealth* v. *McAfee*, 63 Mass. App. Ct. 467, 477 n.11 (2005) (noting the absence of a United States Supreme Court opinion on point and discussing how the Massachusetts case law was consistent with that of the United States Court of Appeals for the First Circuit). The apparent divergence between Federal and State law on police-created exigencies became apparent only in the wake of *Kentucky* v. *King*, 131 S. Ct. 1849 (2011), which was decided after oral argument in this case.[3] Moreover, here again, the Commonwealth simply has not argued that the defendant waived his art. 14 grounds.

Of course, just because we could reach the defendant's argument in the current appeal does not mean that we necessarily should do so. The majority suggests that there are prudential reasons for deferring the question, invoking the need for full

---

[3]In *Commonwealth* v. *Molina, supra* at 211, the Supreme Judicial Court held that "[t]he exigent circumstance requirement is not satisfied" when "[t]he exigent circumstances that emerged . . . were a result of the officers' appearance at the dwelling." Although the court did not expressly ground its holding on art. 14, I believe *Molina* indicates how the court will likely interpret art. 14 after *Kentucky* v. *King*. The reasoning used in *Molina* appears to be consistent with that set forth by Justice Ginsburg in her dissent in *Kentucky* v. *King*, 131 S. Ct. at 1864 (Ginsburg, J., dissenting) (criticizing the Court's decision for permitting the warrantless entry where police "had ample time to obtain a warrant"). Based on what it said in *Molina* and other cases, I believe the Supreme Judicial Court will be of the same view as Justice Ginsburg when she queried, "How 'secure' do our homes remain if police, armed with no warrant, can pound on doors at will and, on hearing sounds indicative of things moving, forcibly enter and search for evidence of unlawful activity?" *Id.* at 1865. See *Commonwealth* v. *McAfee, supra* at 476, quoting from *Commonwealth* v. *Forde, supra* at 803, in which, in reliance on precedent from the Supreme Judicial Court, this court observed that "it is long settled that 'where the exigency is reasonably foreseeable and the police offer no justifiable excuse for their prior delay in obtaining a warrant, the exigency exception to the warrant requirement is not open to them.' " The facts in *McAfee* are quite similar to the facts here.

and complete fact finding. To be sure, the motion judge made no explicit findings whether the police themselves created the exigency here,[4] and some argument can be made that appellate review should await such fact finding.[5] However, every decision to defer carries some opportunity cost, and I believe that another round of fact finding is, on balance, neither necessary nor advisable. At the evidentiary hearing, the burden rested firmly on the Commonwealth to justify the warrantless search, including whether "it was impracticable for the police to obtain a warrant." *Commonwealth* v. *Molina*, 439 Mass. at 209, quoting from *Commonwealth* v. *Forde*, 367 Mass. 798, 800 (1975). The Commonwealth utterly failed to meet its burden, and I do not view drawing such a conclusion as inappropriate appellate fact finding. There is no evidence in the current record that the defendant was aware of the police presence until they knocked on his door or that he had been tipped off that they were after him. His customer, Eric Griffin, was in custody, and, although the Commonwealth argues that Griffin's two cohorts "were likely to have alerted the defendant about Griffin's arrest," there is no indication in any testimony provided at the hearing that they even knew the defendant or were able to contact him.[6] Indeed, the fact that the officer announced that he would obtain a warrant if the defendant did not open the door indicates that he did not believe any exigency justifying entry existed at that moment. Finally, I note that the Commonwealth has not argued that the record below is inadequate to resolve the defendant's arguments.

In short, I believe the art. 14 issue can be addressed on the current appellate record, and, on balance, I see no good reason for an appellate court to defer that important question until

---

[4]Although the motion judge did not otherwise discuss the police-created exigency doctrine, he did cite to *Molina, supra,* perhaps the lead State case on the issue.

[5]I agree with the majority that the defendant's art. 14 issue "can be properly presented, argued, and briefed below." *Ante* at 250. See Mass.R.Crim.P. 13(a)(5) ("Upon a showing that substantial justice requires, the judge or special magistrate may permit a pretrial motion which has been heard and denied to be renewed").

[6]At oral argument, the Commonwealth more accurately characterized the likelihood of Griffin's cohorts' alerting the defendant to the arrest as a mere "possibility."

another day (especially where neither party has asked us to do so). I would therefore reach the art. 14 issue in the current case.[7]

---

[7]On the merits, I would reverse the denial of the motion to suppress based on how I believe the Supreme Judicial Court is likely to interpret art. 14. See note 3, *supra.*