NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1217                                    Appeals Court

COMMONWEALTH  vs.  JORGE POLANCO.

No. 16-P-1217.

Middlesex.     October 11, 2017. - February 20, 2018.

Present:  Milkey, Massing, & Ditkoff, JJ.


Controlled Substances.  Practice, Criminal, Speedy trial,
    Dismissal, Motion to suppress, Required finding.  District
    Court, Arraignment.  Constitutional Law, Search and
    seizure.  Search and Seizure, Exigent circumstances.



    Indictments found and returned in the Superior Court
Department on August 7, 2014.

    A motion to dismiss was heard by Kathe M. Tuttman, J.; a
pretrial motion to suppress evidence was heard by her; and the
cases were tried before her.


    Murat Erkan for the defendant.
    Sandra Weisberger, Assistant District Attorney, for the
Commonwealth.


    DITKOFF, J.  The defendant, Jorge Polanco, appeals from his

Superior Court convictions of trafficking in heroin, G. L.

c. 94C, § 32E(c), and a school zone violation, G. L. c. 94C,

§ 32J.  We must decide whether to consider time spent in

District Court when calculating the time to be included for purposes of a speedy trial under Mass.R.Crim.P. 36(b), 378 Mass. 909 (1979), in Superior Court. Consistent with the plain language of the rule, we conclude that the time the charges were pending in District Court should not be included in the calculation. Accordingly, the motion judge properly denied the defendant's motion to dismiss. Rejecting the defendant's challenges to the denial of his motion to suppress and the sufficiency of the evidence, we affirm.

1. Background. In April and May of 2013, law enforcement including the Billerica police department were conducting an investigation of a suspected heroin trafficker known as "Johnny," later identified as the defendant. As part of that investigation, Billerica police conducted controlled narcotics purchases using an informant. When the police approached the sellers in those controlled purchases, the sellers admitted to being "runners" for "Johnny," whom they identified as the source of the narcotics. One of the runners agreed to cooperate with the investigation.

Shortly thereafter, the cooperating runner received a telephone call from "Johnny," directing him to customers at a house located at 48 Rogers Street.[1] Prior to that day, that

---

[1] A detective testified that 48 Rogers Street is 281 feet from S.G. Hajjar Elementary School.

residence had not been a target of the investigation, and the police had not yet identified "Johnny" as the defendant.

The police followed the runner to the residence. A motor vehicle pulled up outside the residence, and two men exited the vehicle and spoke to a woman in the house's driveway. The runner then approached the three persons and engaged in a hand-to-hand transaction with one of the men. At this point, the police converged on the driveway with other law enforcement agents. The police had not yet confirmed "Johnny's" whereabouts and were not anticipating his immediate arrest.

As the police entered the driveway area, a detective observed the defendant standing several feet inside the open garage. The defendant, matching the description of "Johnny," turned and fled. The detective gave chase through the garage and into the back yard. The detective believed the defendant to be "Johnny" and feared that he was likely to escape or destroy evidence.

Once in the back yard, the detective apprehended the defendant near the rear fence, facing a shed located in the neighboring yard. The informant and the runner positively identified the defendant as "Johnny." Although no contraband was found on the defendant's person, police retrieved two bags containing 19.06 grams of heroin next to the neighbor's shed.

They also found a cellular telephone and over $1,100 in cash in the defendant's possession.

On May 8, 2013, the Lowell District Court issued a complaint charging the defendant with several drug-related offenses and arraigned him that same day.  After two months, a District Court judge dismissed the charges for failure to prosecute.  Over one year later, on August 7, 2014, a Middlesex grand jury returned indictments arising from the same incident, charging the defendant with trafficking in heroin and a school zone violation.  The defendant was arraigned in Superior Court on August 13, 2014.

On October 30, 2014, the defendant moved to dismiss the charges, alleging a violation of rule 36(b) and his constitutional right to a speedy trial,[2] and also moved to suppress evidence.  Both motions were denied, and the defendant was ultimately convicted of both charges by a jury.

2.  Rule 36(b) motion to dismiss.  Under rule 36(b)(1)(C), a defendant is entitled to dismissal if he is not brought to trial "within twelve months after the return day in the court in which the case is awaiting trial."  See Commonwealth v. Denehy, 466 Mass. 723, 729 (2014); Commonwealth v. Pereira, 82 Mass.

---

[2] On appeal, the defendant raises no challenge to the judge's conclusion that his constitutional right to a speedy trial was not violated.

App. Ct. 344, 346 (2012). The arraignment date is the return date, Mass.R.Crim.P. 2(b)(15), 378 Mass. 844 (1979); Commonwealth v. Fling, 67 Mass. App. Ct. 232, 235 (2006), and "[t]he filing of a motion to dismiss [on rule 36 grounds] tolls the relevant time period." Commonwealth v. Taylor, 469 Mass. 516, 524 n.15 (2014). Here, the defendant was arraigned in Superior Court on August 13, 2014, and filed his motion to dismiss on October 30, 2014 -- well within twelve months. If, however, the return day is the date of the District Court arraignment, May 8, 2013, the speedy trial clock expired. This is because the judicial dismissal in the District Court would not toll the time. Denehy, 466 Mass. at 733-735.

If we were applying the constitutional right to a speedy trial, we would consider the time the charges were pending in District Court. See Commonwealth v. Butler, 464 Mass. 706 (2013). The Supreme Judicial Court in Butler determined that the issuance of a criminal complaint in the District Court is the appropriate start date for purposes of the defendant's constitutional right to a speedy trial, even where the case is later moved to Superior Court. Id. at 713-714. The constitutional right to a speedy trial, however, is primarily concerned with protecting the rights of a defendant, whereas rule 36(b) is "primarily a management tool, designed to assist the trial courts in administering their dockets." Reporter's

Notes to Rule 36, Massachusetts Rules of Court, Rules of Criminal Procedure, at 209 (Thomson Reuters 2017). Accordingly, the contours of the constitutional right are not controlling; "the speedy trial calculus under rule 36 differs from the analysis applied to constitutional claims." Denehy, 466 Mass. at 735 n.18, citing Commonwealth v. Lauria, 411 Mass. 63, 67 (1991). Indeed, the issue arose in Butler precisely because the defendant's rule 36 claim lacked merit. 464 Mass. at 707 & n.3.[3]

"In interpreting a rule of criminal procedure, we turn first to the rule's plain language." Denehy, 466 Mass. at 733. The plain language of rule 36 states that the clock begins on "the return day in the court in which the case is awaiting trial" (emphasis supplied). Mass.R.Crim.P. 36(b)(1)(C). Because the case was awaiting trial in the Superior Court when the defendant moved to dismiss, the return date must be calculated from his August 13, 2014, arraignment in that court. The Reporter's Notes to Rule 36(b)(1), supra at 210, are consistent with this conclusion, stating that, "if a defendant is bound over to the Superior Court after a probable cause

---

[3] Under the constitutional right to a speedy trial, time during which charges are dismissed does not count, regardless of whether a judge or a prosecutor dismissed the charges. See United States v. MacDonald, 456 U.S. 1, 7 n.7 (1972); Butler, 464 Mass. at 713. Under rule 36(b), time during which charges are dismissed counts if a judge dismissed the charges, but does not count if a prosecutor dismissed the charges. Denehy, 466 Mass. at 733-735.

hearing . . . or the Commonwealth elects to proceed by direct indictment in a case commenced by complaint which is within the District Court's jurisdiction . . . the time limits of this rule begin anew upon the return day in the Superior Court."[4]

As a practical matter, including prior District Court proceedings in rule 36(b) calculations would impose a great burden on the trial courts. Before setting a tracking order, a Superior Court judge would need to calculate the time expired on prior District Court proceedings on every charge, itself a time-consuming and complex exercise, and adjust scheduling to accommodate the timing of District Court proceedings. Rule 36 "is primarily designed to assist in the administration of trial court dockets," Lauria, 411 Mass. at 68, but this reading of the rule would have the opposite effect. Instead, dockets would have to be coordinated between courts, undermining judges' responsibility to "control their own dockets . . . within the time periods specified by rule 36" (emphasis supplied). Commonwealth v. Bourdon, 71 Mass. App. Ct. 420, 428 (2008), quoting from Lauria, supra at 70.

---

[4] Bind-over hearings are a "relic of the past," Commonwealth v. Perkins, 464 Mass. 92, 108 (2013) (Gants, J., concurring), replaced by direct indictment in cases both inside and outside the District Court's final jurisdiction. We place no weight on the Reporter's not foreseeing current direct indictment practice, as the point made is that the clock resets at Superior Court arraignment.

Of course, in an appropriate case, a defendant has protection against unreasonable delays in Superior Court indictment by means other than rule 36(b). A defendant may move to dismiss, as was done here and in Butler, under the constitutional right to a speedy trial. A defendant may move to dismiss under Mass.R.Crim.P. 36(c), 378 Mass. 909 (1979).[5] Commonwealth v. Sigman, 41 Mass. App. Ct. 574, 580 (1996). A defendant may move to dismiss on the ground of prejudicial preindictment delay. See Commonwealth v. Dame, 473 Mass. 524, 530-531 (2016). All of these avenues serve to protect a defendant against unreasonable delays in an appropriate case.

Excluding the District Court time comports with Supreme Judicial Court calculations in rule 36 cases as well, even post-Denehy. In Taylor, 469 Mass. at 520 & n.7, for example, the defendant was arrested and thus arraigned in District Court well before he was indicted. Nonetheless, the Supreme Judicial Court calculated the time under rule 36(b) from the Superior Court arraignment, excluding the District Court time. See id. at 522.

---

[5] Rule 36(c) provides that "a defendant shall upon motion be entitled to a dismissal where the judge after an examination and consideration of all attendant circumstances determines that: (1) the conduct of the prosecuting attorney in bringing the defendant to trial has been unreasonably lacking in diligence and (2) this conduct on the part of the prosecuting attorney has resulted in prejudice to the defendant."

Here, accordingly, the defendant's motion to dismiss was properly denied.

3. Motion to suppress. On appeal, we review a ruling on a motion to suppress by accepting "the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law." Commonwealth v. Ramos, 470 Mass. 740, 742 (2015), quoting from Commonwealth v. Colon, 449 Mass. 207, 214, cert. denied, 552 U.S. 1079 (2007). We discern no error in the motion judge's determination that exigent circumstances justified the detective's warrantless entry into the garage and the resulting search and seizure.

The Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights require that all searches and seizures must be reasonable, and that all warrantless searches and seizures of a home are presumptively unreasonable. Ramos, 470 Mass. at 744-745. See Commonwealth v. Gentle, 80 Mass. App. Ct. 243, 250 (2011), quoting from Commonwealth v. Molina, 439 Mass. 206, 211 (2003) (the Fourth Amendment and art. 14 "scrupulously guard against the intrusion of the government into a citizen's home without a warrant"). Even in the absence of a warrant, however, a nonconsensual entry may be valid if the Commonwealth proves both probable cause and

exigent circumstances.  Ramos, supra at 744, citing Commonwealth
v. DeJesus, 439 Mass. 616, 619 (2003).[6]

Exigent circumstances to justify a warrantless entry may
exist if the entry is reasonably believed necessary to prevent
the loss or destruction of evidence, Ramos, 470 Mass. at 745,
particularly if supported by "[f]actors such as 'a showing . . .
that the suspect was armed, a clear demonstration of probable
cause, strong reason to believe the suspect was in the dwelling,
and a likelihood that the suspect would escape if not
apprehended.'"  Molina, 439 Mass. at 209, quoting from
Commonwealth v. Forde, 367 Mass. 798, 807 (1975).  In this case,
the police had probable cause and reason to believe that the
defendant would remove evidence and escape apprehension if not
pursued through the garage.  Accordingly, there were exigent
circumstances sufficient to justify the warrantless entry.  See
Ramos, supra at 746-747.

The defendant contends, however, that the police
deliberately created the exigent circumstances themselves and
therefore cannot avail themselves of this exception to the

---

[6] The defendant concedes, and based on our independent
review we agree, that the police had probable cause at the
moment of entry.  The Commonwealth does not contest the
defendant's sworn statement that he was a frequent overnight
guest at 48 Rogers Street and, thus, had standing to contest the
warrantless entry.  See Commonwealth v. Morrison, 429 Mass. 511,
513 (1999).

warrant requirement.  See Molina, 439 Mass. at 210.[7]  Under

Molina, "police officers cannot deliberately create the exigency

that leads to the warrantless arrest."  Ibid.  Or, to put it

another way, "where the exigency is reasonably foreseeable and

the police offer no justifiable excuse for their prior delay in

obtaining a warrant, the exigency exception to the warrant

requirement is not open to them."  Forde, 367 Mass. at 803.

In Molina, the police received the name and address of a

suspect, reported and discussed the allegations back at the

station, then proceeded to the suspect's residence to effectuate

the arrest without a warrant.  439 Mass. at 207, 210.  Because

(1) it was foreseeable the police would have to enter the

apartment to make the arrest; (2) the police offered no

justification for the failure to obtain a warrant; and (3) no

evidence of risk of flight or harm was produced, the exigent

---

[7] After Molina was decided, the United States Supreme Court decided that the Fourth Amendment invalidates a warrantless entry with probable cause under exigent circumstances only where the police create the exigency by "engaging or threatening to engage in conduct that violates the Fourth Amendment."  Kentucky v. King, 563 U.S. 452, 462 (2011).  See Gentle, 80 Mass. App. Ct. at 249.  This standard is different from that applied in Molina, 439 Mass. at 209-211, which was based on pre-King Federal law relied upon in Forde, 367 Mass. at 806-807.  Neither this court nor the Supreme Judicial Court has decided whether art. 14 retains the broader protections against warrantless entry described in Molina, see Gentle, supra at 251-252, and we need not reach the question.  Instead, we assume arguendo the continued vitality of the doctrine of manufactured exigency under art. 14, as set forth in Molina, and, as discussed infra, conclude that the facts here do not meet that standard.

circumstances resulted solely from the officers' decision to make the warrantless arrest. Id. at 210-211. The warrantless entry accordingly was unlawful. Id. at 211. See Forde, 367 Mass. at 802 (failure "to offer any explanation for why no effort was made to obtain a warrant" prior to exigency was fatal to Commonwealth's claim).

Similarly, in Commonwealth v. McAfee, 63 Mass. App. Ct. 467 (2005), the police made a warrantless entry at the known residence of a suspected drug dealer, where they had at least four days to obtain a search warrant but failed to do so without justification. Id. at 477. Although the identity of the suspect was unknown, his presence at the residence was confirmed, and the evidence showed no risk of flight, destruction of evidence, or harm -- until the police knocked on his door, making it easily foreseeable that the suspect would refuse them entrance while concealing or destroying drug-related evidence. Id. at 474-475. Again, the warrantless entry was not justified. Id. at 477.

The present case shares none of these characteristics. Here, with no reason to believe that the defendant would be just inside the garage, the police were moving to confront the three persons standing outside in the driveway.[8] No exigency requiring

---

[8] Although there was some evidence that the runner informed the police of "Johnny's" presence earlier that day, the runner

entrance into the garage occurred until the moment the police observed the defendant -- fitting the description of "Johnny." The defendant fled immediately despite orders to stop.  At this point, the police had probable cause to believe that the fleeing suspect possessed drugs and would likely try to destroy or conceal them.

Moreover, the situation developed rapidly; the police had no time to obtain a warrant before the defendant could have escaped and removed contraband.  See Ramos, 470 Mass. at 746 ("rapidly unfolding events" gave objectively reasonable belief that warrantless entry was necessary to prevent destruction of evidence).  Prior to this moment, the police were unaware of "Johnny's" true identity, actual residence, and presence at 48 Rogers Street.  Thus, the police offered a justifiable excuse for failing to obtain a warrant, and they neither knew nor intended the events as transpired.  For these reasons, the exigent circumstances were not foreseeable and were not deliberately created by the police.  See Commonwealth v. Owens, 92 Mass. App. Ct. 193, 201-202 (2017) (no manufactured exigency

_____

had not actually confirmed "Johnny's" whereabouts at the time of the entry, and police officers specifically testified that they were unaware of "Johnny's" presence at that time.  Accordingly, the motion judge was entitled to find that it was not reasonably foreseeable that "Johnny" would be at the residence prior to the arrest.

where the police "had legitimate reasons to proceed with the sting operation . . . before proceeding any further").

4. Sufficiency of the evidence. When reviewing the denial of a motion for a required finding of not guilty, "we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Oberle, 476 Mass. 539, 547 (2017). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting from Commonwealth v. Woods, 466 Mass. 707, 713 (2014).

Here, the Commonwealth was required to prove the defendant actually or constructively possessed trafficking-weight heroin. See Commonwealth v. Mojica, 59 Mass. App. Ct. 925, 925-926 (2003). "Constructive possession requires a showing of 'knowledge coupled with the ability and intention to exercise dominion and control,'" Commonwealth v. Caraballo, 81 Mass. App. Ct. 536, 541 (2012), quoting from Commonwealth v. Gonzalez, 452 Mass. 142, 146 (2008), which "may be established by circumstantial evidence, and the inferences that can be drawn therefrom." Mojica, supra at 926, quoting from Commonwealth v. Gonzalez, 42 Mass. App. Ct. 235, 237 (1997). "While a

defendant's presence in an area where contraband is found is not enough, . . . 'presence, supplemented by other incriminating evidence, will serve to tip the scale in favor of sufficiency.'" Caraballo, supra at 541-542, quoting from Commonwealth v. Clarke, 44 Mass. App. Ct. 502, 505 (1998). Where the contraband is narcotics, evidence of drug dealing may be sufficiently incriminating. See Caraballo, supra at 538, 541-542 (drug ledger, paraphernalia used to cut and package drugs, and small portion of heroin found on defendant was sufficient evidence of constructive possession of large drug stash located in the same apartment).

Here, the heroin was found near where the defendant was arrested and there was abundant evidence that the defendant was involved in drug-dealing activities. Specifically, the evidence supported the conclusion that the defendant was a large-scale heroin distributor, with "runners" and former customers providing information against him. The incident occurred at a "stash house," where the defendant was reported to have had heroin that same day, and where drug sales had been observed. He was also found with over $1,100 in cash.

Moreover, the defendant's immediate flight from the police, in the direction of where the heroin was later found, is further incriminating evidence. See Commonwealth v. Whitlock, 39 Mass. App. Ct. 514, 519 (1995) ("Evidence, such as flight from the

scene, possession of large amounts of cash, or attempts to conceal or dispose of contraband . . . permit an inference of unlawful possession"). See also Commonwealth v. Brzezinski, 405 Mass. 401, 410 (1989) ("The defendant's retreat into the closet containing cocaine and cocaine paraphernalia allowed an inference of consciousness of guilt").

Direct proof that the defendant threw the heroin bags during his escape is unnecessary. Given the evidence, the inference that the defendant knew of and previously possessed the drugs was reasonable. See Gonzalez, 42 Mass. App. Ct. at 239 ("[The] type of inculpatory evidence, rather than the precise location of the drugs, . . . is most significant to a sufficiency analysis in a constructive possession case"); Mojica, 59 Mass. App. Ct. at 926 (reasonable inference that defendant dropped heroin sufficient to establish possession). Accordingly, the evidence was sufficient.

Judgments affirmed.