NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11398

COMMONWEALTH  vs.  RODRICK JAMES TAYLOR.


Suffolk.     December 5, 2013. - August 29, 2014.

Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly,
& Lenk, JJ.[1]


Homicide.  Constitutional Law, Speedy trial.  Practice,
    Criminal, Dismissal, Speedy trial, Discovery, Waiver,
    Argument by prosecutor.



Indictment found and returned in the Superior Court
Department on July 28, 2006.

A motion to dismiss for lack of speedy trial was heard by
Stephen E. Neel, J., and the case was tried before him; a motion
for postconviction relief, filed on April 28, 2011, was heard by
Diane M. Kottmyer, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Chauncey B. Wood (John Swomley with him) for the defendant.
Sarah H. Montgomery & Kathleen Celio, Assistant District
Attorneys (Edmond J. Zabin, Assistant District Attorney, with
them) for the Commonwealth.

---

[1] Chief Justice Ireland participated in the deliberation on
this case prior to his retirement.

Benjamin H. Keehn, Committee for Public Counsel Services,
for Committee for Public Counsel Services, amicus curiae,
submitted a brief.

William M. Jay, of the District of Columbia, Paul F. Ware,
Jr., Joshua M. Daniels, & Kevin P. Martin, for Boston Bar
Association, amicus curiae, submitted a brief.

LENK, J.  The defendant appeals from his conviction of
murder in the second degree.  He maintains both that a Superior
Court judge erred in denying his motion to dismiss for lack of a
speedy trial pursuant to Mass. R. Crim. P. 36 (b), as amended,
422 Mass. 1503 (1996), and that errors in the prosecutor's
closing argument require reversal.

As to the speedy trial claim, the judge did not abuse his
discretion in denying the defendant's motion to dismiss under
Mass. R. Crim. P. 36, 378 Mass. 909 (1979) (rule 36).  A total
of 614 calendar days had elapsed between the defendant's
arraignment and the filing of his motion to dismiss, which
tolled the running of time in which the defendant's trial must
have commenced.  See Barry v. Commonwealth, 390 Mass. 285, 294
(1983).  However, the Commonwealth met its burden of showing
that at least 249 days were excludable from the speedy trial
calculation, and that the defendant accordingly had been brought
to trial within the requisite one-year period under rule 36.[2]

---

[2] Although Mass. R. Crim. P. 36, 378 Mass. 909 (1979)
(rule 36), is primarily a rule of case management, see Turner v.
Commonwealth, 423 Mass. 1013, 1013 (1996); Commonwealth v.

Because the defendant acquiesced in certain delays, failed to object to every continuance sought by the Commonwealth, did not press a motion under Mass. R. Crim. P. 14 (a) (1) (C), as appearing in 442 Mass. 1518 (2004), to compel production of mandatory discovery, and otherwise engaged in ordinary motion practice, we discern no error in the judge's decision to deny the defendant's motion to dismiss on speedy trial grounds.

That being said, we nonetheless take this occasion to examine the difficulties presented when, as here, the Commonwealth fails timely to comply with its obligations under Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004) (rule 14), to produce mandatory discovery.  A defendant must decide in those circumstances whether to press a motion to compel production of the requisite discovery, aware that, under extant case law, doing so automatically will stop the running of the speedy trial clock, notwithstanding the time it may take to resolve such a motion.  Otherwise put, a defendant who has not

Lauria, 411 Mass. 63, 67 (1991), it was also designed to "quantify the time limits beyond which a defendant's speedy trial rights shall be deemed to have been denied," and thus to facilitate defendants' constitutional right to a speedy trial. See Reporter's Notes to Rule 36, Massachusetts Rules of Court, Rules of Criminal Procedure, at 235 (Thomson Reuters 2014).  See also Barker v. Wingo, 407 U.S. 514, 523 (1972).  The defendant does not allege any violation of his constitutional right to a speedy trial.

timely received mandatory discovery must choose between preserving his or her speedy trial rights and receiving the mandatory discovery to which he or she is also entitled.  We address this untenable situation by concluding that the time it takes to resolve a rule 14 motion brought to compel mandatory discovery should not, as at present, automatically be excluded from the speedy trial calculus.  Instead, the judge who hears such a motion must determine on a case-by-case basis whether delays resulting from its resolution fairly should count towards the Commonwealth's twelve-month timeline.

Regarding the prosecutor's closing argument, we conclude, separately, that the defendant is not entitled to a new trial.  Although certain of the prosecutor's remarks were improper, they did not, viewed in context, constitute reversible error.

1.  Background.  a.  Overview.  On July 28, 2006, a Suffolk County grand jury returned an indictment charging the defendant with murder in the first degree, G. L. c. 265, § 1; the defendant was arraigned on August 3, 2006.  Six hundred and fourteen days later, on April 7, 2008, the defendant filed a "motion to dismiss for lack of speedy trial," which the Commonwealth opposed.  After a nonevidentiary hearing, the Superior Court judge who later presided at the defendant's trial denied the motion on May 12, 2008, and issued a written decision explaining the reasons for that denial on June 27.  Trial began

on May 14, 2008, and the case went to the jury on June 26, 2008. After six days of deliberation, the jury found the defendant guilty of murder in the second degree; the defendant timely appealed.

Several years later, the defendant filed a motion for a new trial, alleging that the trial judge erred in failing to instruct the jury sua sponte on the relevance of the defendant's intoxication on the night of the crime and that counsel was ineffective for failing to request such an instruction.[3] A different judge denied that motion, and the defendant timely appealed. After consolidating his direct appeal with the appeal from the denial of his new trial motion, a panel of the Appeals Court affirmed the defendant's conviction. See Commonwealth v. Taylor, 83 Mass. App. Ct. 1106 (2013). We granted the defendant's application for further appellate review, which asked that we consider only his direct appeal.

b. Facts. i. The Commonwealth's case. The Commonwealth argued at trial that the defendant strangled the victim, a young woman named Dominique Samuels, early on Friday, April 28, 2006, then burned her body in a nearby park early on Sunday, April 30, 2006.

_____

[3] See note 2, supra.

The victim lived on Woodbine Street in the Roxbury section of Boston. Also residing there were brothers Martin and Brian McCray;[4] Martin's cousin, Danielle Taylor;[5] and a friend of Martin. The landlord and her family lived on the first floor. On the evening of Thursday, April 27, 2006, the defendant and Martin were drinking alcohol and playing video games in Martin's room. Just before 10 P.M., Martin left and spent the night at the home of his girl friend, while the defendant remained in Martin's room. Later that night, the daughter of the landlord, whose bedroom was directly beneath Martin's, heard screaming and loud noises from Martin's room, as did Danielle.

The following morning, the defendant told Martin that he had "killed her, the girl upstairs, Dominique" by strangling and choking her. The defendant showed Martin scratches on his arms and neck that he claimed Dominique had inflicted on him, and told Martin that the victim's body was in her room at the Woodbine Street apartment. Between that afternoon, Friday, April 28, 2006, and the early morning of Sunday, April 30, 2006, Martin and the defendant had several telephone conversations. According to Martin, the defendant said that he needed a vehicle

---

[4] We refer to Martin McCray by his first name.

[5] Danielle Taylor is not related to the defendant; we refer to her by her first name.

so he could dispose of the victim's body. The defendant told Martin that he was going to burn the victim's fingertips because her nails had his skin beneath them. At 5:30 A.M. on Sunday, April 30, the defendant telephoned Martin and told him, "It's done."

The victim's body was discovered in Franklin Park at approximately 6 A.M. on the morning of April 30, her face and hands heavily burned. A search of Martin's bedroom produced two bloodstains, one consisting of the victim's blood and the other with a deoxyribonucleic acid (DNA) profile consistent with that of the defendant. Martin informed police investigators that the defendant had confessed to killing the victim, and after interviewing the defendant,[6] who denied involvement in the victim's death, police arrested the defendant for murder.

ii. The defendant's theory of the case. The defendant's central argument was that Martin, not the defendant, had killed the victim and burned her body, and that Martin was lying about the defendant's confession. Defense counsel maintained that cellular telephone records provided an alibi for the defendant at the time the victim's body was burned.

2. Discussion. a. Speedy trial rights. The time between the defendant's arraignment and his motion to dismiss for lack

---

[6] The jury heard a recording of this interview.

of a speedy trial was 614 days, 249 days longer than rule 36 provides. Because the resolution of the defendant's speedy trial claim relies in substantial part on delays occasioned by the Commonwealth's failure to provide mandatory discovery pursuant to rule 14, we first examine the relationship between rule 36 and rule 14.

Rule 36 ensures that defendants are brought to trial within a reasonable time, requiring that a defendant "shall be tried within twelve months after the return day[7] in the court in which the case is awaiting trial." Mass. R. Crim. P. 36 (b) (1) (C). If the defendant is not brought to trial within one year, "he shall be entitled upon motion to a dismissal of the charges." Mass. R. Crim. P. 36 (b) (1). The twelve-month period may be tolled, however, during those periods enumerated by Mass. R. Crim. P. 36 (b) (2), or where the defendant acquiesced in the delay, Commonwealth v. Jones, 6 Mass. App. Ct. 750, 752-753 (1978), was responsible for the delay, Commonwealth v. Loftis, 361 Mass. 545, 549-550 (1972), or benefited from the delay. Commonwealth v. Alexander, 371 Mass. 726, 728-729 (1977). See Commonwealth v. Look, 379 Mass. 893,

---

[7] The return day is "the day upon which a defendant is ordered by summons to first appear or, if under arrest, does first appear before a court to answer to the charges against him, whichever is earlier." Mass. R. Crim. P. 2 (b) (15), 378 Mass. 846 (1979). Here, the return date was August 3, 2006, when the defendant was arraigned.

898 n.2 (1980); Reporter's Notes to Rule 36 (b) (2),
Massachusetts Rules of Court, Rules of Criminal Procedure, at
236 (Thomson Reuters 2014).  The Commonwealth bears the burden
of demonstrating that any period of time should be excluded from
the calculation.  See Barry v. Commonwealth, 390 Mass. 285, 291
(1983); Commonwealth v. Look, supra.

Rule 14 (a) (1) (A) of the Massachusetts Rules of Criminal
Procedure, as amended, 442 Mass. 1518 (2004), requires the
Commonwealth to produce to the defense, at or before the
pretrial conference, various relevant items in the
Commonwealth's possession, custody, or control.[8]  See
Commonwealth v. Frith, 458 Mass. 434, 439 (2010), quoting
Commonwealth v. Green, 72 Mass. App. Ct. 903, 903 n.1 (2008)
(mandatory discovery "promote[s] judicial efficiency" and

---

[8] Rule 14 (a) (1) (A) of the Massachusetts Rules of
Criminal Procedure, as amended, 442 Mass. 1518 (2004), provides,
in relevant part:

"The prosecution shall disclose to the defense, and
permit the defense to discover, inspect and copy, each of
the following items and information at or prior to the
pretrial conference, provided it is relevant to the case
and is in the possession, custody or control of the
prosecutor, persons under the prosecutor's direction and
control, or persons who have participated in investigating
or evaluating the case and either regularly report to the
prosecutor's office or have done so in the case . . . ."

The rule then lists nine categories of items that constitute
mandatory discovery.

"encourage[s] full pretrial discovery"). Because rule 14 was intended to facilitate the automatic production of mandatory discovery "without the need for motions or argument," Reporter's Notes (Revised, 2004) to Rule 14, Massachusetts Rules of Court, Rules of Criminal Procedure, at 179 (Thomson Reuters 2014), and because the Commonwealth's obligation to produce is ongoing, see Mass. R. Crim. P. 14 (a) (1), the defendant need not request any mandatory discovery items.[9] Rule 14 "shall have the force and effect of a court order" such that "failure to provide discovery pursuant [thereto] may result in application of . . . sanctions." Mass. R. Crim. P. 14 (a) (1) (C).

    i. <u>Denial of defendant's motion to dismiss</u>. A. <u>Pretrial continuances and discovery motions</u>. The pretrial proceedings

---

[9] The text of Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004) (rule 14), does not address the steps a defendant may take to compel production of mandatory discovery that the Commonwealth has failed to produce, as required, at or before the pretrial conference. Mass. R. Crim. P. 14 (c), which addresses the sanctions available in the event of untimely production, states only that the judge may make discovery orders, grant a continuance, or grant other relief appropriate under the circumstances. The Reporter's Notes make clear, however, that where the Commonwealth has not produced certain mandatory discovery items enumerated in rule 14 (a) (1) (A), a defendant's "proper response is to file a motion to compel discovery or, in an appropriate case, a motion for sanctions under (a) (1) (C)." Reporter's Notes to Rule 14, Massachusetts Rules of Court, Rules of Criminal Procedure, at 184 (Thomson Reuters 2014).

here[10] occurred between August 3, 2006, when the defendant was arraigned, and April 7, 2008,[11] when he filed his motion to dismiss for lack of a speedy trial pursuant to rule 36 (b). Over the course of those nearly two years, the case was continued twenty-three times, as detailed below.

The defendant's pretrial conference occurred on September 7, 2006. At that point, the Commonwealth had not produced all mandatory discovery as required by rule 14 (a) (1) (A). The defendant thus filed several motions concerning mandatory discovery in October and November, 2006. Although in that period he filed a motion to compel all mandatory discovery pursuant to rule 14 (a), the docket indicates that the defendant requested the court to reserve this motion "for a later hearing if necessary." However, the defendant did not thereafter request such a hearing, nor did he press his motion in any other way, and the motion was never

---

[10] The regional administrative justice presided over each hearing in this case, excepting only two dates in July, 2007, until the point at which the defendant filed his motion to dismiss. The judge who presided over the defendant's trial also had decided his rule 36 motion to dismiss and his motion for sanctions pursuant to Mass. R. Crim. P. 14 (c), as appearing in 442 Mass. 1518 (2004).

[11] In December, 2007, the assistant district attorney who had been prosecuting the case left the Suffolk County district attorney's office and was succeeded by a different assistant district attorney, who prosecuted the case throughout trial.

decided. The defendant did not avail himself of any other remedies pursuant to rule 14 until he filed his motion for sanctions on April 28, 2008.[12] Rather, he made two specific mandatory discovery requests pursuant to Mass. R. Crim. P. 14 (a) (1) (A), seeking to procure, first, all statements made by Martin and, second, all videotape recordings produced or obtained in connection with the investigation. The judge granted the two requests and set deadlines for the Commonwealth's compliance.

Between the September 7, 2006, pretrial conference and May 17, 2007, the judge conducted hearings as to the status of mandatory discovery. On most of those occasions, the Commonwealth indicated that it had yet fully to comply with its rule 14 obligations, and requested additional time to do so. Defense counsel agreed to each requested continuance, but also repeatedly stated that he was not waiving his client's rule 36 rights.

At a hearing on May 17, 2007, the judge ordered full compliance with mandatory discovery by June 5, 2007. The judge then considered a joint motion filed by the prosecutor seeking to reschedule the presumptive trial date. Defense counsel

---

[12] In denying the defendant's rule 36 motion to dismiss, the judge noted, inter alia, the defendant's failure to take action under rule 14.

agreed to the change in the presumptive date from August 27, 2007, to February 7, 2008, but stated that he did not intend to "treat[] [the motion to reschedule] as a [r]ule 36 waiver."

Between May 17 and December 4, 2007, further hearings were conducted as to the status of mandatory discovery. The Commonwealth again requested additional time to provide the required items. At a hearing on December 4, 2007, the prosecutor represented to defense counsel that he had complied with all mandatory discovery. Defense counsel requested additional time to review the "voluminous" package, which he had received on that day, again indicating that he "ha[d] never waived any [r]ule 36 time." At a December 27, 2007, status hearing, defense counsel notified the judge that, because the prosecutor had yet to provide all mandatory discovery,[13] he would not be prepared for the February 7, 2008, trial date. The Commonwealth then filed a motion requesting that the trial date be continued to May 2, 2008, which the judge allowed.

On April 7, 2008, the defendant filed a motion to dismiss for lack of a speedy trial pursuant to the Sixth Amendment to the United States Constitution and art. 11 of the Massachusetts

---

[13] Between December 19, 2006, and April 1, 2008, defense counsel sent seven letters to the prosecutors, each listing items of mandatory discovery that he asserted were still outstanding.

Declaration of Rights, as well as rule 36. He subsequently filed a motion seeking sanctions against the Commonwealth for its failure timely to produce all mandatory discovery pursuant to Mass. R. Crim. P. 14 (c), as appearing in 442 Mass. 1518 (2004). After nonevidentiary hearings, at which time the Commonwealth had yet to file the certificate of compliance required by Mass. R. Crim. P. 14 (a) (3), as appearing in 442 Mass. 1518 (2004),[14] the judge denied both motions. On May 9, during jury selection, the Commonwealth filed its certificate of compliance, and trial began on May 14.

B. Ruling on the defendant's motion. Because 614 calendar days had elapsed between the day of the defendant's arraignment on August 3, 2006, and the day he filed his motion to dismiss for lack of a speedy trial on April 7, 2008,[15] it was the Commonwealth's burden to show that, of these 614 days, 249 were

---

[14] Rule 14 (a) (3) of the Massachusetts Rules of Criminal Procedure, as appearing in 442 Mass. 1518 (2004), requires that the Commonwealth "file with the court a Certificate of Compliance," indicating a good faith inquiry into relevant discovery items and the complete production thereof. See Commonwealth v. Frith, 458 Mass. 434, 440-441 (2010).

[15] The twelve-month period began to run on the day after the defendant's arraignment, see note 7, supra, which was the event that caused this "period of time to begin to run." Mass. R. Crim P. 36 (b) (3). See Commonwealth v. Bourdon, 71 Mass. App. Ct. 420, 424 n.6 (2008). The filing of a motion to dismiss tolls the relevant time period. Commonwealth v. Sigman, 41 Mass. App. Ct. 574, 575 n.1 (1996), citing Commonwealth v. Barry, 390 Mass. 285, 294 (1983).

excludable.  See Commonwealth v. Mattos, 404 Mass. 672, 674 (1989).  On appeal, we consider whether the judge abused his discretion in assessing the defendant's speedy trial claims. See Commonwealth v. Fling, 67 Mass. App. Ct. 232, 236 n.9 (2006).

The defendant maintains that the judge abused his discretion in denying the motion to dismiss because the defendant did not acquiesce in or benefit from the delays caused by the Commonwealth's protracted failure to produce mandatory discovery, and the defendant pointedly and repeatedly indicated that he was not waiving his rule 36 rights by virtue of such delay.  Although the defendant did not "essentially waive[] his right to a speedy trial by failing to object to any of the delay," Commonwealth v. Amidon, 428 Mass. 1005, 1008 (1998), he did not take adequate steps to preserve his rule 36 rights. Accordingly, we discern no abuse of discretion in the denial of his motion to dismiss.

The judge correctly concluded that defense counsel cannot preserve a defendant's rule 36 rights simply by stating that those rights are not waived.  A defendant must instead explicitly and formally object, on the record, to each and every proposed continuance or delay.  See, e.g., Commonwealth v. Bourdon, 71 Mass. App. Ct. 420, 426 (2008) ("formalized objection . . . serves the vital purpose of notifying both the

prosecutor and the court that attendant delays may not be excluded from the operation of the rule"); Commonwealth v. Fling, supra at 236, citing Commonwealth v. Fleenor, 39 Mass. App. Ct. 25, 28 n.4 (1995) ("an objection to a specific continuance [must be] timely noted" and should be made on record or filed in writing).

We discern no error in the judge's determination that the defendant failed to satisfy these stringent requirements.  Of the twenty-three continuances in his case, sixteen were "by agreement"; at one hearing, defense counsel agreed to reschedule the presumptive trial date from August 27, 2007, to February 7, 2008.  The defendant invoked rule 36 on just six occasions and lodged only one formal objection.  Indeed, defense counsel conceded at the hearing on the rule 36 motion that he "didn't [object] every single time" the Commonwealth requested a continuance.  The defendant nevertheless contends that he sufficiently preserved his speedy trial rights by informing the prosecutor and the court that his agreement to various continuances did not constitute a waiver of rule 36.  Our jurisprudence does not support this construction of the rule.  A defendant may not simultaneously agree to a continuance and assert his rule 36 rights, even if he or she states, as counsel did here, that such agreement is not a waiver.  See Commonwealth v. Sigman, 41 Mass. App. Ct. 574, 579 (1996) ("defendant is

bound by his agreement to the continuances").  In light of the defendant's failure to object to each requested continuance, the judge properly concluded that counsel's efforts to avoid having acquiesced in any delay amounted to an impermissible "blanket objection."  See Commonwealth v. Fling, supra at 236 n.9.

Moreover, although the defendant did not benefit from the Commonwealth's noncompliance with rule 14, the judge found that the delays occasioned by missing mandatory discovery worked, in certain respects, to the defendant's advantage.  See Commonwealth v. Vasquez, 55 Mass. App. Ct. 523, 527 (2002).  On at least eight different dates between late 2006 and the eve of trial, the defendant filed motions for summonses to obtain third-party records, many concerning certain telephone calls made by Martin and of cellular telephone tower coverage maps for several towns in the Boston area.  In March, 2007, the defendant filed a motion for summonses of business records from the Boston office of the registry of motor vehicles.  Previously, he had requested that the Commonwealth perform DNA testing on certain items that were to be introduced in evidence.  Each of these motions and requests yielded evidence useful to the defendant's trial preparation, and would have tolled the speedy trial clock irrespective of the Commonwealth's untimely production.  "Having benefited from the delay, the defendant cannot now claim that

the delays are chargeable to the Commonwealth."  Commonwealth v.

Sigman, supra at 578-579.

Finally, the defendant has not shown that the Commonwealth

was solely responsible for the belated trial date.  The

defendant did not avail himself of any remedies pursuant to

rule 14 in the face of the Commonwealth's delayed production of

mandatory discovery.  As discussed below, and as the judge

noted, it is incumbent on defense counsel to combat rule 14

violations by filing a rule 14 (c) motion for sanctions or to

compel the production of missing discovery items.  Although the

defendant filed such a motion at the outset of his pretrial

proceedings, he never pressed that motion or requested an

attendant hearing.  "Such casual steps do not suffice" where

rule 36 is concerned.  Commonwealth v. Bourdon, supra at 428.

More is required of a defendant in order to sound the rule 36

"crisis call" and fulfil his or her obligations under the rule.

Id.

Given these considerations, the judge ultimately concluded

that the defendant acquiesced in or benefited from at least 388

days of delay, which exceeded the 249 days the Commonwealth had

the burden to justify.  This ruling was not error.

ii.  Impact of rule 14 violations on rule 36 speedy trial

calculus.  Despite our conclusion that the judge did not abuse

his discretion in denying the defendant's motion to dismiss, we

take this opportunity to address certain problems that may arise when the Commonwealth does not timely produce all the mandatory discovery a defendant is due pursuant to rule 14.  In this situation, a defendant is "placed snugly between a rock and a hard place,"  United States v. Hastings, 847 F.2d 920, 923 (1st Cir.), cert. denied, 488 U.S. 925 (1988), and may be forced to choose between preserving his speedy trial rights and receiving all mandatory discovery well prior to trial.  If a defendant moves to compel the missing discovery or agrees to a continuance requested by the Commonwealth, current case law dictates that he has stopped the speedy trial clock.[16]  See, e.g., Commonwealth v. Murphy, 55 Mass. App. Ct. 332, 333 (2002).  But if a defendant, to preserve his rule 36 rights, objects to any requested continuance or declines to file a motion to compel, he runs the risk that he will not receive all of the discovery he is owed before the trial date arrives.  See United States v. Hastings, supra at 923 (defendant faced with absence of mandatory discovery "could either forgo discovery to which he was entitled

---

[16] Delay occasioned by noncompliance with rule 14 would be excludable either under Mass. R. Crim. P. 36 (b) (2) (A) (v), which notes that "delay resulting from hearings on pretrial motions" shall be excluded, or Mass. R. Crim. P. 36 (b) (2) (F), which provides in part that where a judge grants a continuance with the defendant's consent, time spent thereon shall be excluded.

or he could file a motion to obtain it, thus stopping the speedy trial clock").

Rule 14 and rule 36 need not be in such tension.  A defendant should not be required to choose between the right to mandatory discovery and the right to a speedy trial.  A defendant is entitled to both, and his efforts to obtain the one should not stymie his ability to preserve the other.  However, we are mindful of a defendant's unquestionable "obligation to press [his] case through the criminal justice system," Barry v. Commonwealth, 390 Mass. 285, 296-297 (1983), and that a defendant may not "sit by passively," then later invoke rule 36. Commonwealth v. Bourdon, supra at 426, quoting Commonwealth v. Fling, supra at 236.  A defendant yet to receive all mandatory discovery must accordingly take proactive steps to alert the court and the prosecution that certain items have not been timely produced, and the vehicle for doing so is a motion for sanctions or to compel pursuant to rule 14 (a) (1) (C).

For this reason, we now revisit the established principle that discovery motions filed by a defendant automatically toll the speedy trial clock.  Although this standard is appropriate where the defendant seeks to obtain discretionary discovery under rule 14 (a) (2), it makes little sense when a defendant moves to compel production of discovery he indisputably is owed. A defendant forced by the Commonwealth's untimely production to

file a rule 14 motion to compel does not "cause" delay in the same manner as a defendant who files a motion seeking items to which he is not automatically entitled. Nor can a defendant who agrees to a continuance fairly be said to have "acquiesced" in delay, where that continuance was necessary only in light of the Commonwealth's noncompliance with rule 14.

Where the Commonwealth fails to produce all mandatory discovery at or before the pretrial conference, therefore, a defendant should avail himself of the remedies outlined in rule 14. Specifically, a defendant seeking both to preserve his speedy trial rights and to obtain items of missing mandatory discovery must file a motion for sanctions or to compel pursuant to rule 14 (a) (1) (C).[17] In order that a defendant freely may pursue the discovery he is due without thereby sacrificing his rule 36 rights, the time it takes to resolve the rule 14 (a) (1) (c) motion shall not be excluded automatically from the ultimate speedy trial calculation. This framework ensures both that a defendant will not sit on his hands and then later attempt to invoke rule 36, and also that he need not

---

[17] We note, as did the judge hearing the rule 36 motion, that the defendant in this case never pressed any remedies pursuant to rule 14 in an effort to address the missing mandatory discovery. Even under the rule we announce today, therefore, the defendant's motion to dismiss on speedy trial grounds would not have been successful.

choose between two procedural rights to which he is equally entitled.

A rule 14 (a) (1) (c) motion judge is responsible for determining whether any delay occasioned by the resolution of that motion should, in fact, toll the speedy trial clock. As outlined by Mass. R. Crim. P. 36 (b) (2) (F), the judge is to assess whether "the ends of justice served" by exclusion of time spent on a rule 14 (a) (1) (c) motion brought to compel mandatory discovery "outweigh[] the best interests of the public and the defendant in a speedy trial." This analysis and the result in each case will depend on a number of factors. Where there is no reasonable dispute that the discovery in question is, in fact, mandatory pursuant to rule 14 (a) (1), and where the Commonwealth cannot justify its delayed production, the speedy trial clock ordinarily should continue to run while the motion is resolved. See Commonwealth v. Amidon, 428 Mass. 1005, 1010 (1998) (delay caused by Commonwealth's unjustified untimely production not excludable as beneficial to defendant); Commonwealth v. Wysocki, 28 Mass. App. Ct. 45, 49-50 (1989) (time sought by Commonwealth to comply with routine discovery requests not excludable).

Nevertheless, there may well be circumstances where it is appropriate for the speedy trial clock to be tolled. Where, for example, there is a good faith dispute that the parties have

been unable to resolve as to whether the requested discovery is, in fact, mandatory under the rule, fairness may dictate that some or all of the time be excluded from the speedy trial calculus.  The same result might obtain where the Commonwealth demonstrates that its delayed production was not due to wilful noncompliance or a lack of due diligence.  In each case, "[w]hat needs to be done is a careful analysis of how each of the parties with obligations to help manage the case under rule 36 dealt with, or responded to, the problem causing the delay." Commonwealth v. Lauria, 411 Mass. 63, 70 (1991).

b.  Prosecutor's closing argument.  We turn to the prosecutor's closing argument, which, the defendant maintains, warrants a new trial.  We assess the prosecutor's remarks "in light of the entire argument, as well as in light of the judge's instructions to the jury and the evidence at trial." Commonwealth v. Burgos, 462 Mass. 53, 71 (2012), quoting Commonwealth v. Rodriguez, 437 Mass. 554, 565 (2002).  "A certain measure of jury sophistication in sorting out excessive claims on both sides fairly may be assumed."  Commonwealth v. Kozec, 399 Mass. 514, 517 (1987).

The defendant primarily takes issue with two remarks.[18]  The prosecutor first characterized defense counsel's theory that Martin, not the defendant, was the killer as a "bald-face lie." He went on to suggest that, given the jury's obligation to decide the case only on the evidence before them and the absence of any evidence that Martin had killed the victim, it would be a violation of the jurors' oath were they to think Martin the killer and, on that basis, to disbelieve his testimony inculpating the defendant.  Both statements were ill-advised and should not have been made.  As to the phrase "bald-face lie," a prosecutor treads on dangerous ground when he can be seen as accusing defense counsel of engaging in fabrication.  See Commonwealth v. Lewis, 465 Mass. 119, 128-129, 132 (2013) (prosecutor erred in suggesting entire defense theory was "a sham" and implying defense counsel had lied to jury). Similarly, the second comment, while addressing itself to specific evidence that the prosecutor immediately went on to discuss at length, in other settings could have been misunderstood by the jury to mean that they were not permitted to take a different view of the evidence or credit a theory of

---

[18] The defendant also objects to what he terms the prosecutor's improper reference to his personal opinion, his comment allegedly regarding the defendant's decision not to take the stand, and his disparagement of defense counsel.  As to these statements, we agree with the panel of the Appeals Court that there was no error.

Martin's guilt without violating their oaths. Prudence counsels against an invocation of the jurors' oath in this fashion. That being said, in the circumstances here, we are satisfied that the prosecutor's isolated if unfortunate remarks did not constitute prejudicial error requiring a new trial.

Whether prosecutorial error warrants reversal will depend on a number of factors, including whether the defendant seasonably objected, whether the error was limited to collateral issues, whether curative instructions were given, and whether the error may have made a difference in the jury's conclusions. See, e.g., Commonwealth v. Kozec, supra at 518. Here, the judge offered two curative instructions, one contemporaneous in response to the defendant's objection and one in his final charge to the jury, both directing the jury to reach their decision based on the evidence before it. Together, these instructions sufficed to "mitigate any prejudice in the final argument." See id. at 517; Commonwealth v. Burgos, supra at 72 n.24.

Moreover, throughout this nearly eight-week trial, the Commonwealth presented a substantial case against the defendant, including forensic evidence corroborating his presence at the site of the victim's death and testimony that he had confessed to strangling the victim. See Commonwealth v. Degro, 432 Mass. 319, 329 (2000) (prosecutor's erroneous statement not

prejudicial given "very strong" evidence against defendant).  In light of the Commonwealth's strong case and the judge's curative instructions, the prosecutor's "fleeting" comments cannot reasonably be thought to have affected the jury's careful deliberations.  Commonwealth v. Cunneen, 389 Mass. 216, 223-224 (1983).  After considering the extensive evidence before them for six days, the jury eventually returned a verdict of murder in the second degree despite the Commonwealth's strenuous arguments for a conviction of guilty of murder in the first degree.  See Commonwealth v. Grandison, 433 Mass. 135, 143 (2001) (defendant's acquittal on one charge indicated "jury were able to sort out any hyperbole").

Judgment affirmed.